IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

BRANDON RICHARD ROBERTS,           §
                                   §
            Plaintiff,             §
                                   §
v.                                 §                 1:15-CV-309 RP
                                   §
ZEV TECHNOLOGIES, INC. d/b/a       §
GLOCKWORX,                         §
                                   §
            Defendant.             §

## ORDER

Before the Court are Defendant's Partial Motion to Dismiss, filed September 18 (Dkt. 32), Plaintiff's Response, filed October 2, 2015 (Dkt. 33), and Defendant's Reply, filed October 9, 2015 (Dkt. 34). After reviewing the pleadings and the relevant law, the Court issues the following order.

## BACKGROUND

On the evening of December 25, 2012, Plaintiff Brandon Richard Roberts ("Roberts") was carrying the Glock Model 23 .40 caliber pistol in a holster inside the pocket of his robe. (Pl.'s Am. Compl. ¶ 9.) The pistol fell out of his pocket and hit the ground. (*Id.*) Upon contact with the floor, the pistol discharged. (*Id.*) The bullet entered Roberts' right hand and partially exited through his palm. (*Id.* ¶ 10.) As a result, Roberts has undergone multiple surgeries and suffered permanent injuries. (*Id.*) A portion of the bullet remains in his hand today. (*Id.*)

Defendant Zev Technologies, Inc. doing business as GlockWorx ("GlockWorx") designs, manufactures, and distributes parts to customize Glock pistols. (*Id.* ¶ 6.) Plaintiff Roberts' Glock pistol was outfitted with the GlockWorx Fulcrum Trigger Kit, which Roberts purchased online and installed himself. (*Id.* ¶ 8.) GlockWorx markets the Fulcrum Trigger Kit as "the finest trigger available for the Glock" and operable "with all factory safeties intact." (*Id.* ¶ 6.) According to the

GlockWorx website, installing the trigger kit "requires no special tools or the services of a gunsmith." (*Id.*)

Plaintiff Roberts alleges that "the GlockWorx Fulcrum Trigger Kit greatly increases the sensitivity of the subject firearm's discharge mechanism to an extreme and unsafe degree, increasing the volatility of the firearm" thus creating a risk of "accidental firing without volitional trigger pull." (*Id.* ¶¶ 12,13.) Roberts argues that but for GlockWorx's misconduct he would not have purchased or installed the Fulcrum Trigger Kit and that without the trigger kit installed his gun would not have accidentally discharged. (*Id.* ¶¶ 16.)

Plaintiff Roberts brings suit against Defendant GlockWorx and asserts eight causes of action, including: strict liability/products liability for design defects (Count I), strict liability/products liability for marketing defects (Count II), negligence (Count III), breach of warranty (Count IV), public misrepresentation (Count V), negligent misrepresentation (Count VI), deceptive trade practices (Count IX), and gross negligence (Count X). Defendant now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's causes of action for strict liability/products liability for marketing defects, public misrepresentation, negligent misrepresentation, deceptive trade practices, and gross negligence. Defendant contends that with regard to these five causes of action Plaintiff has failed to state a claim upon which relief can be granted.

## LEGAL STANDARD

Plaintiff's allegations are appropriately judged based on federal pleading standards. Plaintiff contends that because his original pleading was filed in state court, his allegations should be judged according to state pleading standards. (Resp. 3 n.2, Dkt. 33.) However, after this case was removed to federal court, Plaintiff moved for leave to amend his complaint. (Pl.'s Resp. Def.'s Partial Mot. Dismiss 17-18, Dkt. 14.) Leave was granted and Plaintiff filed his First Amended Complaint. (Pl.'s Am. Compl., Dkt. 30.) The filing of an amended complaint

supersedes the original pleading. *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 618 (5th Cir. 1992). Accordingly, the allegations in Plaintiff's First Amended Complaint ought to be judged in light of federal pleading standards.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." When evaluating a motion to dismiss under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Federal Rule of Civil Procedure 8 mandates that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, this standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "factual enhancement." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.

This standard is guided by two principles. "First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64. Thus, "[a] court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Id.* at 664. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

**ANALYSIS**

Defendant seeks to dismiss five of Plaintiff's causes of actions for failure to plead sufficient facts to state a claim for relief. The Court will address each cause of action in turn.

A.  Strict Liability for Marketing Defect (Count II)

Plaintiff asserts a cause of action based on the tort of strict liability for marketing defect. A marketing defect cause of action consists of five elements: "(1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist; (2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed; (3) the product must possess a marketing defect; (4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury." *USX Corp. v. Salinas*, 818 S.W.2d 473, 482-83 (Tex. App.—San Antonio 1991, writ denied).

In support of his cause of action for marketing defect, Plaintiff alleges that use of the GlockWorx trigger kit creates an unreasonable risk of accidental discharge. Plaintiff pleads that "the GlockWorx Fulcrum Trigger Kit greatly increases the sensitivity of the subject firearm's discharge mechanism to an extreme and unsafe degree, increasing the volatility of the firearm— including in the form of inadvertent discharges." (Pl.'s Am. Compl. ¶ 12.) Moreover, Plaintiff asserts that "GlockWorx failed to provide an adequate warning as to the increased and extreme sensitivity caused by the GlockWorx Fulcrum Trigger Kit, or any instructions for safe use in light of the volatility of the firearm caused thereby." (*Id.* ¶ 14.) In short, Plaintiff claims that the GlockWorx trigger kit made an already dangerous firearm unreasonably dangerous. (*Id.*)

Defendant's first argument for dismissal is that a manufacturer cannot be liable for failing to warn about an alleged design defect in a product. Defendant contends that liability for failure to warn only exists "if the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous." (Def.'s Reply 3, Dkt. 34.) Defendant asserts that there can

be no liability for failure to warn if "the product at issue was unreasonably dangerous due to an alleged design defect and not due to a failure to warn." (Def.'s Partial Mot. Dismiss 11, Dkt. 32.) However, Plaintiff makes both arguments. Plaintiff asserts that the trigger kit was made unreasonably dangerous due to defective design. However, if a design defect is not responsible for the inordinate danger, Plaintiff asserts that at the very least the Defendant had a duty to warn the consumer that the product increases the sensitivity and volatility of the firearm. The two causes of action are properly understood as arguments in the alternative.

Defendant's second argument for dismissal is that Texas law imposes no duty to warn of the obvious dangers of owning a firearm. The law does not require a manufacturer to warn of obvious risks. *See Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995). Specifically, Texas does not require manufacturers to warn of the obvious dangers of owning or selling a handgun. *See Keene v. Sturm, Ruger & Co.*, 121 F. Supp. 2d 1063, 1070 (E.D. Tex. 2000) (collecting cases); *see also Foltz v. Smith & Wesson Corp.*, No. 3:08-CV-0858-K, 2009 U.S. Dist. LEXIS 74785, at *6 (N.D. Tex. Aug. 20, 2009) ("Cases applying Texas law have been unanimous in holding that there is no duty to warn of the obvious dangers of owning or selling a handgun."). The determination of whether a risk is sufficiently obvious as to eliminate a manufacturer's duty to warn is a question of law. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997) (internal citations and quotation marks omitted) ("The existence of a duty to warn of dangers or instruct as to the proper use of a product is a question of law. . . . [T]here is no duty to warn when the risks associated with a particular product are matters within the ordinary knowledge common to the community.").

The Court must determine whether the risk that a firearm will accidentally discharge when dropped is obvious. It is common knowledge that if a gun is dropped there is some risk of accidental discharge. On the other hand, most guns are not so sensitive or volatile as to guarantee discharge if dropped. Thus, the precise question the Court must answer is whether Plaintiff's use of the GlockWorx trigger kit increased the risk of accidental discharge above and

beyond the amount of risk incident to ordinary gun use. Answering this question requires the Court to determine (a) the ordinary risk that a gun will accidentally discharge when dropped and (b) if and to what degree use of the GlockWorx aftermarket trigger increases that risk. The latter question is clearly a question of disputed fact not appropriately resolved at the motion to dismiss stage. So, while the question of whether Defendant had a duty to warn is admittedly a question of law, here, that question is so interwoven into the facts of the case that it cannot be answered without a more developed record.

Plaintiff alleges that installation of the trigger kit causes extreme sensitivity and volatility rendering Plaintiff's firearm significantly more dangerous and more susceptible to accidental discharge than an ordinary firearm. (Pl.'s Am. Compl. ¶ 14, Dkt. 30.) Taken as true, this allegation supports a finding that the GlockWorx trigger kit increases the risk of accidental discharge above the amount that the Court deems is "ordinary knowledge common to the community." *Grinnell*, 951 S.W.2d at 426. Thus, Plaintiff's pleadings support a finding that Defendant had a duty to warn of the dangers incident to using the GlockWorx aftermarket trigger.

Accordingly, the Court finds that Plaintiff has alleged facts sufficient to support a claim for relief under the tort of strict liability for a marketing defect. The Court concludes that Defendant's motion to dismiss should be denied insofar that it seeks to dismiss Plaintiff's cause of action for strict liability or products liability due to a marketing defect.

B.  Public Misrepresentation (Count V)

Plaintiff asserts a cause of action based on the tort of public misrepresentation. To prove public misrepresentation a plaintiff must demonstrate (among other requirements) that the defendant made "to the public a misrepresentation of a material fact concerning the character or qualify of a chattel sold by [the defendant]." Restatement (Second) of Torts § 402B (1965); *see also Crocker v. Winthrop Labs, Div. of Sterling Drug, Inc.*, 514 S.W.2d 429, 431 (Tex. 1974) (adopting Section 402B). Defendant moves to dismiss the public misrepresentation claim,

6

arguing that none of the statements made by Defendant were false or misleading. (Def.'s Partial Mot. Dismiss 9, Dkt. 32.) Moreover, Defendant argues that the alleged representations are expressions of opinions or general statements of safety or dependability, and thus not actionable under the tort of public misrepresentation. (*Id.*)

However, Plaintiff has alleged that Defendant made material representations to the public that go beyond simply stating an opinion or offering a generic declaration of safety or dependability. Plaintiff asserts that "GlockWorx represented to the public and consumers . . . that the Trigger Kit is an improvement to Glock's factory parts, has no effect on the safety of the firearm, and can be installed easily by the consumer without the need for special tools and/or the services of a gunsmith." (Plf.'s Am. Compl. ¶ 14, 26, 28, Dkt. 30.) Plaintiff also asserts that "[h]ad [he] been aware that the GlockWorx Fulcrum Trigger Kit has a deleterious effect on the quality and safety of the Glock Model 23 .40 caliber pistol and its factory parts, he would not have purchased, installed, or otherwise used the product, and he would not have been injured by the product." (*Id.* ¶ 6.) More specifically, Plaintiff alleges that Defendant represents to the public on its website that the GlockWorx trigger kit is "operable 'with all factory safeties intact'" and that installation "requires no special tools, or the services of a gunsmith." (*Id.* ¶ 6.)

The Court finds that if Plaintiffs allegations are proven true they support a finding that Defendant made material misrepresentations to the public with regard to the character or quality of the trigger kit. Plaintiff alleges that Defendant made specific statements with regard to (1) the effect installation of the aftermarket trigger has on the functionality of the firearm and (2) the type of person who is reasonably capable of installing the aftermarket trigger. Plaintiff's general factual allegations suggest the possibility that his gun accidentally discharged because the installation of the trigger kit interfered with the functionality of a factory safety or otherwise made the gun more susceptible to accidental firing. It is plausible that the discharge would not have occurred but for the fact that the trigger kit interfered with the factory safety or that the trigger kit could not be safely installed by without special tools or instruction. If those factual allegations

are proven true, then it is plausible that Defendant made a misrepresentation of material fact to the public about the trigger kit.

The Court finds that the false representations allegedly made by Defendant are sufficiently specific to support a claim for relief under the tort of public misrepresentation. Moreover, these alleged representations go beyond generic statements with regard to the safety or dependability of a product. Accordingly, the Court concludes that Defendant's motion to dismiss should be denied insofar that it seeks to dismiss Plaintiff's public misrepresentation claim.

C.  Negligent Misrepresentation (Count VI)

Plaintiff asserts a cause of action based on the tort of negligent misrepresentation. The Restatement of Torts recognizes two different torts for negligent misrepresentation. Section 552B defines the general tort for negligent misrepresentation. To prove negligent misrepresentation, a plaintiff must demonstrate (among other requirements) that a defendant, in the course of his business or profession, negligently supplies false information, intended to guide the plaintiff in his or her business transactions and causing a pecuniary loss. Restatement (Second) of Torts § 552B (1977). Section 311 defines a separate tort for negligent misrepresentation involving risk of physical harm. To prove negligent misrepresentation under Section 311 a plaintiff must demonstrate (among other requirements) that the defendant negligently gave false information to the plaintiff leading causing the plaintiff to incur physical harm. Restatement (Second) of Torts § 311 (1965). Section 311 negligent misrepresentation, unlike Section 552B negligent misrepresentation does not requires the misinformation provided be intended to guide the plaintiff in his or her business transactions, nor does it require the loss incurred to be pecuniary in nature. *See Id.* § 311 cmt. a ("The rule stated in this Section represents a somewhat broader liability than the rules stated as to liability for pecuniary loss resulting from negligent misrepresentation, stated in § 552B, to which reference should be made for comparison.").

Plaintiff contends that Defendant committed the tort of negligent misrepresentation involving risk of physical harm pursuant to Section 311 of the Restatement. (Plf.'s Resp. 10, Dkt. 33.) However, Texas has not adopted Section 311 of the Restatement or otherwise created a tort for negligent misrepresentation leading to physical harm, rather than pecuniary loss. *See Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 295 (Tex. 1996) (Enoch, J., dissenting) ("Even more striking is that this Court has refused to recognize the tort of negligent misrepresentation for a non-pecuniary injury. In Texas, the only cause of action for negligent misrepresentation that exists is if . . . the plaintiff suffers *pecuniary* loss by justifiably relying on the representation.") Accordingly, the only relief for negligent misrepresentation available under Texas law is under Section 552B of the Restatement. *See Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (adopting Section 552B). However, negligent representation under Section 552B requires a showing that "the defendant supplie[d] 'false information' for the guidance of others in their business." *Id.* Nothing in Plaintiff's Amended Complaint suggests that the GlockWorx trigger kit was purchased for business purposes.

Accordingly, the Court finds that Plaintiff has not stated a claim on which relief can be granted with regard to his negligent misrepresentation claim. The Court concludes that Plaintiff's negligent misrepresentation claim (Count VI) should be dismissed with prejudice.

D.  Deceptive Trade Practices (Count IX)

Defendant moves to dismiss Plaintiff's claims under the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41-17.63, arguing that the DTPA does not provide a cause of action for personal injury claims. (Def.'s Partial Mot. Dismiss 4, Dkt. 32.) Section 17.49(e) of the DTPA explains that "except as specifically provided by Subsections (b) and (h), Section 17.50, nothing in this subchapter shall apply to a cause of action for bodily injury or death or for the infliction of mental anguish." Tex. Bus. & Com. Code § 17.49(e). Texas appellate courts have repeatedly admonished that the DTPA does not provide relief for personal injury claims. *See Last v. Quail Valley Country Club, L.P.*, No. 01-08-00759-CV, 2010 WL

1253782, at *7 (Tex. App. Mar. 25, 2010) (holding that the Texas Legislature intended most personal injury claims to fall outside the purview of the DTPA); *DiGangi v. 24 Hour Fitness USA, Inc.*, No. 05-04-01119-CV, 2005 WL 1367945, at *2 (Tex. App. June 10, 2005) (holding that personal injury claims are generally barred by the DTPA).

Plaintiff alleges that he was personally injured when a gun accidentally discharged. Thus, Plaintiff's claims are presumptively not allowed under Section 17.49(e). However, that Section allows for exceptions as specifically provided for by either Section 17.50(b) or 17.50(h). Accordingly, in order for Plaintiff to have a viable claim under the DTPA, Plaintiff must show that his claims fall within the scope of one these exceptions.

a. Section 17.50(b)

The first exception to the DTPA's bar on claims for personal injury or mental anguish is found in Section 17.50(b). Section 17.50 of the DTPA is entitled "Relief for Consumers." Section 17.50(a) provides four different ways in which a consumer may state a claim for relief under the DTPA, including by showing (1) the use of false, misleading, or deceptive trade practices, (2) the breach of an express or implied warranty, (3) any unconscionable action, or (4) the violation of Chapter 541 of the Insurance Code. Tex. Bus. & Com. Code § 17.50(a)(1)-(a)(4). Section 17.50(b) explains the type of relief available to a consumer who prevails on one of the theories articulated in the previous subsection. That subsection states in part:

> In a suit filed under this section, each consumer who prevails may obtain:
>
> (1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of the damages for mental anguish or economic damages.

10

*Id.* § 17.50(b)(1). In short, Section 17.50(b) explains that as a general rule a successful plaintiff under the DTPA can recover economic damages, but if the Plaintiff can show the violation was committed either knowingly or intentionally then the Plaintiff can recover damages for mental anguish.

The question for the Court is in what manner and to what degree does Section 17.50(b) create a specific exception to Section 17.49(e). Plaintiff contends that "[b]ecause [he] seeks damages specifically provided by Section 17.50(b), Section 17.49(e) does not preclude his DTPA claims." (Def.'s Resp. 17, Dkt. 33.) Accordingly, Plaintiff believes the DTPA allows him to recover at least economic damages, and, if he can show the violation was committed either knowingly or intentionally, mental anguish damages as well. This reading is unavailing for two reasons. First, Section 17.50(b) states the general rule as to what damages are available to successful DTPA plaintiffs. Plaintiff applies this general rule to personal injury claimants and in doing so treats a personal injury claimant no differently than any other DTPA claimant. Such a reading renders Section 17.49(e)'s bar on relief for personal injury meaningless. Second, Section 17.49(e) requires than any exception must be "specifically provided" for by Section 17.50(b). However, the language Plaintiff cites is generally applicable. Nothing in the text of Section 17.50(b) allows recovery *specifically* for personal injury claims.

Notably, Section 17.49(e) bars not only personal injury claims but also claims for the infliction of mental anguish. In this light, the interaction between the two clauses becomes more clear. Section 17.49(e) states that as a general rule the DTPA does not allow claims for the infliction of mental anguish, except for the extent specifically provided for by Section 17.50(b). Section 17.50(b), in turn, creates an exception for when a plaintiff is able to show a violation was committed knowingly or intentionally. Nothing in Section 17.50(b) overrides Section 17.49(e)'s unambiguous declaration that the DTPA does not create a cause of action for personal injury claims. *See Last*, 2010 WL 1253782, at *7 (dismissing a DTPA claim related to injuries sustained on a mechanical bull); *DiGangi*, 2005 WL 1367945, at *2 (holding that plaintiff

who sustained injuries while using exercise equipment were not entitled to economic damages under the DTPA).

    b.  Section 17.50(h)

The second exception to the DTPA's bar on claims for personal injury or mental anguish is found in Section 17.50(h). Section 17.50(h) allows for recovery of actual damages when a claim is brought pursuant to a DTPA "tie-in statute." A tie-in statute is an independent statute that creates a cause of action under the DTPA. For example, the Health Spa Act is a tie-in statute because it expressly provides for enforcement of its terms under the DTPA. *See* Tex. Occ. Code Ann. § 702.403. Section 17.50(h) reads in part: "[I]f a claimant is granted the right to bring a cause of action under this subchapter by another law, the claimant is not limited to recovery of economic damages only, but may recover any actual damages incurred by the claimant . . . ." *Id.* § 17.50(h). Thus, if a DTPA claim is brought pursuant to Section 17.50(h) for a tie-in statute violation, rather than pursuant to Section 17.50(a) for general deceptive trade practices, then the bar on recovery for personal injury claims may not apply.

Plaintiff contends that Chapter 82 of the Texas Civil Practice and Remedies Code creates a cause of action for products liability under Section 17.50(h) of the DTPA. (Plf.'s Resp. 17-18, Dkt. 33.) Accordingly, Plaintiff argues that because relief is sought under a tie-in statute pursuant to Section 17.50(h), that Section 17.49(e)'s bar on relief for personal injury claims does not apply. However, Chapter 82 does not include any language creating a DTPA cause of action. Rather, Chapter 82 restricts the type of relief available in a products liability case, regardless of the particular legal claim (strict liability, negligence, misrepresentation, etc.) brought by the plaintiff. For example, Chapter 82 requires that in products liability actions the manufacturer indemnify the seller. *See* Tex. Civ. Prac. & Rem. Code Ann. § 82.002. Chapter 82 is a restriction on, not the source of, personal injury relief.

Moreover, even if Chapter 82 did create a DTPA tie-in cause of action, Plaintiff's Amended Complaint does not allege a violation of Chapter 82. Plaintiff alleges DTPA violations

under the laundry list of deceptive trade practice, for breach of warranty, and for unconscionable actions, all pursuant to Section 17.50(a). (Plf.'s Am. Compl. ¶¶ 30-32.) Plaintiff's Amended Complaint makes no mention of Chapter 82. Accordingly, the Court finds that Plaintiff has not stated a claim for relief pursuant to a tie in statute under Section 17.50(h). Thus, Section 17.50(e)'s bar on recovery for personal injury claims applies.

The DTPA does not recognize claims for personal injury or infliction of mental anguish, subject to two exceptions. Neither exception applies here. Thus, the remaining question is to what degree Plaintiff's claims are personal injury claims barred by the DTPA. Plaintiff's principal allegations, that he suffered bodily injury after his gun discharged, are clearly barred by Section 17.49(e). However, in his response, Plaintiffs claims to also seek economic damages unrelated to his bodily injury "such as the costs related to his purchase of the product at issue." (Plf.'s Resp. 16, Dkt. 33.) However, the Amended Complaint focuses exclusively on costs incurred as a result of Plaintiff's bodily injury. Plaintiff does not allege facts that would support a plausible claim for bodily injury unrelated to his injury. For example, Plaintiff does not specify where he purchased the trigger kit or how much he paid.

The Court finds that Plaintiff's DTPA allegations constitute "a cause of action for bodily injury" under Section 17.49(e) and therefore are not allowed. The Court concludes that Plaintiff's DTPA claims (Count IX) should be dismissed with prejudice.

E.  Gross Negligence (Count X)

Plaintiff asserts a cause of action based on the tort of gross negligence. Under Texas law, gross negligence has two elements: First, viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Tex. Civ. Prac. & Rem. Code § 41.001(11)(A). Second, the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others. *Id.* §

13

41.001(11)(B). Proving gross negligence allows a plaintiff to recover exemplary damages. *Id.* § 41.003(a)(3).

Defendant moves to dismiss Plaintiff's claim for gross negligence arguing that Plaintiff's Amended Complaint lacks "well-pleaded factual allegations" and "merely regurgitates the elements of gross negligence." (Def.'s Resp. 13, Dkt. 33.) However, Plaintiff contends that GlockWorx acted with gross negligence by manufacturing an "unreasonably dangerous" aftermarket trigger that "causes increased and extreme sensitivity in the subject firearm, thereby increasing the volatility of the firearm" thus leading to increased likelihood of "inadvertent discharges." (Pl.'s Am. Compl. ¶ 34, Dkt. 30.) Plaintiff further asserts that "GlockWorx had actual awareness of the risk but proceeded anyway with the sales with a conscious indifference to the safety and welfare of others." (*Id.*) Moreover, Plaintiff supports this contention with several factual allegations, including the fact his Glock firearm, equipped with Defendant's aftermarket trigger, discharged without the trigger having been pulled (*Id.* ¶ 9) and the fact that Defendant made representations suggesting that installation of the aftermarket trigger would not affect the firearm's existing safety features (*Id.* ¶ 6).

The Court finds that Plaintiff's claim for gross negligence is plausible and suggests an entitlement to relief. While Plaintiff may have a long road ahead of him to actually prove the elements of gross negligence, he has alleged sufficient facts to withstand a motion to dismiss. Accordingly, the Court concludes that Defendant's motion to dismiss should be denied insofar that it seeks to dismiss Plaintiff's cause of action for gross negligence.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's Partial Motion to Dismiss (Dkt. 32).

Plaintiff's cause of action for negligent misrepresentation (Count VI) is hereby **DISMISSED WITH PREJUDICE.**

Plaintiff's cause of action for deceptive trade practices (Count IX) is hereby **DISMISSED WITH PREJUDICE.**

All other relief requested is hereby **DENIED.**

**SIGNED** on November 23, 2015.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE